DANCIGER et al. v. STONE et al.

(Circuit Court, E. D. Oklahoma. January 18, 1910.)

No. 1,232.

1. Intoxicating Liquors (§ 147*)—Sale—Place of Commerce.

Where complainants, liquor dealers in Missouri, received orders for liquor by mail from customers in Oklahoma and delivered the liquor to carriers in Missouri for transportation to the purchasers receiving a bill of lading which was thereupon forwarded to a bank or other collecting agent in the place where the customer resided, who collected the purchase price and then delivered the bill of lading to the purchaser, who obtained the liquor from the carrier, such transaction constituted a sale

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of liquor in Missouri, and the transportation thereof interstate commerce, and was not therefore a violation of the Oklahoma prohibitory law.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 162; Dec. Dig. § 147.*]

2. INTOXICATING LIQUORS (§ 138*)—TRANSPORTATION—COLLECTING AGENT FOR SELLER—STATUTES.

Act March 4, 1909, c. 321, § 239, 35 Stat. 1136,[1] provides that any railroad company, express company, or other common carrier or any other person, who, in connection with the transportation of liquors from one state to another, shall collect the purchase price or any part thereof before, on, or after delivery, from the consignee or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, save only in the actual transportation and delivery thereof will be fined. *Held*, that the acts referred to were condemned only when connected with the interstate transportation of liquor, and that the act of a bank in collecting a draft attached to a bill of lading for liquor transported in interstate commerce from the purchaser was not in connection with the interstate transportation of the liquor, and it was therefore not within the statute.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 148; Dec. Dig. § 138.*]

In Equity. Bill by Dan Danciger and others against S. W. Stone and others. On demurrer to complainants' application for temporary application and temporary injunction. Demurrer overruled, and injunction granted.

See, also, 187 Fed. 853.

E. H. Busiek, for complainants.
Fred S. Caldwell, for respondents.

CAMPBELL, District Judge. At the hearing, respondent's demurrer and the complainant's application for temporary injunction were heard together. At the completion of the hearing, the court announced that, unless the demurrer should be sustained, the complainants were entitled to the temporary injunction prayed for, upon the showing made; it appearing that, since the decision of this court in a former case (187 Fed. 853) in which they were complainants, they have not solicited the purchase of liquors within this district, and are not now doing so. The demurrer was taken under advisement, and the parties given time within which to file briefs in support of their respective contentions, which they have now done.

The complainants allege in their bill that their principal method and custom of making shipments into other states, including the state of Oklahoma, is to receive mail orders for shipments from customers outside of the state of Missouri for sales and shipments of liquors to be made in Missouri, and directed to other states; that, after said orders are accepted by complainants, the liquors are delivered at Kansas City, Mo., to various railroad companies and other common carriers, transporting freight from said state of Missouri to such other states; that in all cases where goods are sold and delivered to the carrier in Kansas City, Mo., the said sales are made outside of the state of Oklahoma, and the goods are delivered to the carrier for the purpose of making

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
[1] U. S. Comp. St. Supp. 1909, p. 1464.

delivery to the consignee only. Complainants further allege: That after delivering said liquors to carriers for shipment, as aforesaid, in the state of Missouri, they receive from the carrier a bill of lading and forward said bill of lading to a bank, or some responsible person, at the home of the consignee, attached to which is a sight draft for the purchase price of the liquor. The customer pays the draft and receives the bill of lading, and presents the same to the railroad company and receives the shipment. That this method is what is known to the railroad, and to the public generally, as "shipper's order," "order notify," or "sight draft and bill of lading" method.

[1] Respondents contend that complainants are not entitled to the protection of the commerce clause of the Constitution, for the reason that their method of business, as stated in their bill, amounts to a sale of liquor within the state of Oklahoma, and is, therefore, a violation of the state prohibitory law. In the opinion of the court, this question is determined adverse to respondent's contention by the ruling of the Supreme Court of the United States in American Express Co. v. Iowa, 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417.

[2] It is further and especially urged by respondents that complainants cannot invoke the aid of a court of equity because it appears from their bill that their business is carried on and conducted in direct violation of section 239 of an act of Congress approved March 4, 1909, c. 321, 35 Stat. 1136, which reads as follows:

"Any railroad company, express company, or other common carrier, or any other person who, in connection with the transportation of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined not more than five thousand dollars."

It is urged that under this statute any bank which collects one of complainant's drafts with bill of lading attached violates the foregoing statute, and that, as complainant confesses that it is procuring banks so to do, it is not in position to seek aid of this court of equity. Unless under this statute a bank in this state may be criminally prosecuted for collecting one of the complainant's drafts, there is no force in respondent's contention. Let us analyze the statute and see against whom it is directed. The law applies to "any railroad company, express company, or other common carrier, or any other person" whose acts shall bring him within its terms. The acts at which the statute is leveled are: First, the collection of the purchase price, or any part thereof before, on, or after delivery, from the consignee, or from any other person; and, second, in any manner acting as the agent of the buyer, or seller, of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transpor-

tation and delivery of the same. But such acts are only condemned by this section when they are committed in connection with the interstate transportation of such liquor. It is true the bank, when it collects the draft, collects the purchase price of the liquor; but can such collection be said to be in any way in connection with the interstate transportation of the same? The transportation is effected by the railroad company, or other common carrier, entirely independent of the bank. The transportation of the liquor and the collection of the draft are two separate and distinct acts, performed by separate and distinct individuals or corporations, and the fact that the carrier, under its contract, cannot deliver the shipment until the consignee first goes to the bank and pays the draft, to secure the bill of lading, and then presents it to the carrier, cannot be said to in any way connect the bank with the transportation. Its act cannot therefore be said to be in violation of the terms of the statute. To my mind, there is nothing obscure about this section of the statute. Its manifest purpose is to provide that common carriers, or any other persons, engaged in or connected with the interstate transportation of intoxicating liquors, shall confine themselves wholly to such carriage and transportation, and shall not act as agent of the buyer or seller of liquor, for the purposes of the collection of the purchase price, or for any other purpose, "saving only in the actual transportation and delivery of the same." This construction of the statute is clearly sustained by the report of the congressional committee, relative to this legislation while the same was pending in Congress, an extract of which is quoted in complainant's brief, and reads as follows:

"The principal cause of difficulty in restricting the liquor traffic in the states prohibiting such traffic, has been the misuse of the facilities furnished by railroad companies, express companies, and other common carriers in bringing in liquors from outside states to be paid for on delivery. To meet this evil, your committee report the substitute.

"By the proposed substitute, if it be enacted into law, Congress will, under its constitutional authority, bring its power to bear directly upon the common carriers, prohibiting them from acting as agents of the vendors of liquors in other states. Further, by requiring that all interstate shipments of liquors shall be plainly marked as to their contents, the substitute hereby submitted will enable the several states to trace and to control the disposition and use of such liquors under their own police powers."

It follows that the demurrer must be overruled, and the temporary injunction granted.