NORTHERN PAC. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1914.)

No. 4015.

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE—REPORT OF EXCESSIVE SERVICE—OMMISSION OR MISTAKE IN.

An omission by a common carrier from a periodical report of the instances of excessive service of its employés, made and filed in good faith within the time prescribed therefor by the Interstate Commerce Commission pursuant to the amendment of section 20 of the act to regulate commerce (Act June 18, 1910, c. 309, § 14, 36 Stat. 555 [U. S. Comp. St. Supp. 1911, p. 1307]), of one or more instances that should have been included therein, or any mistake of law or fact made therein in good faith, does not subject the common carrier to liability for the penalties or forfeitures denounced by that amendment for a failure to file the periodical report.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

Hours of service of employés, see note to United States v. Houston Belt & T. Ry. Co., 125 C. C. A. 485.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. STATUTES (§§ 174, 175*)—CONSTRUCTION—NATURAL MEANING PREFERRED TO HIDDEN SIGNIFICATION.

> The apparent and natural meaning of the terms of a statute is to be preferred to any curious recondite signification deduced by study, ingenuity, and strong desire.

> [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 254, 266; Dec. Dig. §§ 174, 175.*]

3. STATUTES (§§ 174, 175*)—REASONABLE INTERPRETATION PREFERRED TO UNJUST AND OPPRESSIVE ONE.

> A reasonable sensible interpretation of a statute should be preferred to an irrational signification that renders the law unjust and oppressive.

> [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 254, 266; Dec. Dig. §§ 174, 175.*]

4. STATUTES (§§ 241, 263*)—PENAL STATUTE CREATING NEW OFFENSE—PERSONS AND ACTS DENOUNCED—RETROSPECTIVE CONSTRUCTION.

> A penal statute which creates a new offense and prescribes the punishment for it must clearly state the persons and acts denounced.

> An act or omission which is not clearly an offense by the expressed will of the legislative body before it is committed may not be made so after its commission by the introduction into the law of declarations, or by the expunging therefrom of words or terms, by the judiciary.

> [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323, 344, 349; Dec. Dig. §§ 241, 263.*]

In Error to the District Court of the United States for the District of North Dakota; F. A. Youmans, Judge.

Prosecution of the Northern Pacific Railway Company for failing to correct an omission of an instance of excessive service of its employés in its monthly report. From a conviction, the railroad company brings error. Reversed and remanded.

Emerson Hadley, of St. Paul, Minn. (C. W. Bunn, of St. Paul, Minn., and Watson & Young, of Fargo, N. D., on the brief), for plaintiff in error.

Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C. (Edward Engerud, U. S. Atty., of Fargo, N. D., on the brief), for the United States.

Before SANBORN and HOOK, Circuit Judges, and POPE, District Judge.

SANBORN, Circuit Judge. The railway company complains of a judgment of $500 against it for five fines of $100 each for failing for five successive days to correct an unintentional omission of an instance of excessive service of some of its employés from its monthly report of such instances, filed with the Interstate Commerce Commission on November 29, 1912.

The Interstate Commerce Commission, under the authority of the amendment of section 20 of the act to regulate commerce of February 4, 1887, chapter 104, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), made June 18, 1910, and found in chapter 309, § 14, 36 Stat. 555 (U. S. Comp. St. Supp. 1911, p. 1305), made an order on June 28, 1911, that all carriers subject to the provisions of "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," commonly called the hours of

---

service act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]), should "report within thirty days after the end of each month, under oath, all instances where employés subject to said act have been on duty for a longer period than that provided in such act," and it was for an innocent omission of one instance from one of these monthly reports that this action was brought. Section 20 of the act of 1887, as amended by Act June 29, 1906 (34 Stat. pp. 584, 593, c. 3591, § 7 [U. S. Comp. St. Supp. 1911, p. 1307]), authorized the Commission to require annual reports from each common carrier subject to the act of its capital stock issued, the amounts paid therefor, the manner of payment therefor, its dividends paid, its surplus fund, the number of its stockholders, its funded and floating debt, the cost and value of its property, franchises, and equipment, the number of its employés and the salaries paid each class, its accidents, earnings, receipts, expenditures, etc., and it empowered the Commission to require from each carrier specific answers to all questions upon which the Commission might need information. A subsequent portion of this section 20, as amended in 1910 (36 Stat. 556), read in this way:

"If any carrier, person, or corporation subject to the provisions of this act shall fail to make and file said annual reports within the time above specified, or within the time extended by the Commission for making and filing the same, or shall fail to make specific answer to any question authorized by the provisions of this section within thirty days from the time it is lawfully required so to do, such parties shall forfeit to the United States the sum of one hundred dollars for each and every day it shall continue to be in default with respect thereto. The Commission shall also have authority by general or special orders to require said carriers, or any of them, to file monthly reports of earnings and expenses, and to file periodical or special, or both periodical and special, reports concerning any matters about which the Commission is authorized or required by this or any other law to inquire or to keep itself informed or which it is required to enforce; and such periodical or special reports shall be under oath whenever the Commission so requires; and if any such carrier shall fail to make and file any such periodical or special report, within the time fixed by the Commission, it shall be subject to the forfeitures last above provided."

This quotation contains the only definition of the offense and the only specification of the penalties involved in this case. The offense is the failure "to make and file any such periodical * * * report within the time fixed by the Commission" and the penalties are "the forfeitures last above provided." The forfeitures last above provided are prescribed for the failure of the carrier to file in due time its annual report, which is required to set forth the vast mass of statistics and information required by the first portion of section 20, and for its failure to answer any specific question propounded by the Commission within the time lawfully prescribed for the answer, and these penalties are the forfeiture of $100 for each and every day the carrier shall continue to be in default with respect to the annual report or the answers to the questions. The judgment in this case was rendered upon the pleadings, and the material facts which they disclose are these: On October 29, 1911, an engineer, fireman, conductor, and two brakemen were called at 7:30 p. m. to take out a wrecker train at 8:10 p. m. from Jamestown, N. D., but it subsequently proved unnecessary to send that train out, and at 8:10 p. m. these employés were

released from duty, and notified that they would not be required for service until 10:35 p. m., and they rendered no service prior to that time, except that the engineer and fireman kept the fire in their engine alive. At 10:35 p. m. they took a train east from Jamestown to Mapleton, where they arrived and where their service ceased at 1:15 p. m., October 30, 1911, so that, unless they were in service between 8:10 p. m. and 10:35 p. m., October 29, 1911, their service was only 14 hours and 40 minutes, and they rendered no excess service. If, on the other hand, they were on duty between 8:10 p. m. and 10:35 p. m., October 29th, their continuous service exceeded the 16 hours limited by the hours of service act. It was conceded at the hearing in this court that the United States had sued the company, had recovered, and the company had paid, the penalty prescribed by the hours of service act for this excessive service, and that by that judgment the fact that these employés were on duty from 8:10 p. m., October 29th, until 1:15 p. m., October 30th, was rendered res adjudicata. On November 29, 1911, the railway company filed its monthly report, under oath, of the instances of hours of service of its employés on duty during October for longer periods than those named in the hours of service act, in the form and in accordance with the regulations of the Interstate Commerce Commission, and many such instances were disclosed therein. By reason of the abandonment of the wrecker train, the company did not consider or understand, when it made and filed this report, that it was required to report the instance which has been described, and its report was intended in good faith to be true and complete, and to embrace any and all instances where its employés were kept in service longer during the month of October than the times limited by the act of Congress, but it did not specify the instance of excessive service on which this suit is founded. The result is that the case, in brief, is this:

[1] The Commission lawfully required the company to file within 30 days after the end of each month a monthly or periodical report of all instances of hours of service of its employés on duty for a longer period than that named in the hours of service act. The twentieth section of the act to regulate commerce, as amended, fixed a penalty of $100 for each and every successive day of failure of the company to file such a periodical report. The company filed in good faith such a periodical report, under oath, within the time fixed, but unintentionally and by mistake omitted one instance of excessive service from its report which it should have included. Is such an omission a failure to file the periodical report which renders the company liable to the penalty of $100 for each successive day after the expiration of the 30 days within which the report is required to be filed? The court below answered this question in the affirmative, and in support of that conclusion counsel for the government contend that the mistake of the company here was a mistake of law, and not of fact, and for the purposes of this discussion and decision this contention may be admitted to be sound. They argue that the order of the Commission required a monthly report of all instances of excessive service, that the filing of the report of all instances but one was a failure to file a report of all instances, and therefore a failure to file the periodical

report which created a liability to the penalties prescribed by the act. But it is not true that a carrier that in good faith files an incorrect or incomplete periodical report, under oath, in due time, has failed to file any such periodical report. If it were, such a carrier would be liable to penalties for each of the instances of excessive service specified in such a filed report as much as for those omitted, and such a result is too intolerable and oppressive to be seriously contemplated. Counsel cite and review the cases that treat of the constitutionality of the hours of service act, of its worthy purpose, of the authority of the Commission to require the reports and of the duty of the courts to enforce the law (Baltimore & Ohio R. R. Co. v. Interstate Commerce Comm., 221 U. S. 612, 621, 31 Sup. Ct. 621, 55 L. Ed. 878; United States v. Yazoo & M. V. R. Co. [D. C.] 203 Fed. 159; United States v. Chicago, Milwaukee & Puget Sound Ry. Co. [D. C.] 195 Fed. 783), but they present no direct authority that the filing in good faith of an incomplete or incorrect report, affidavit, complaint, answer, or other such article required by law is a failure to file any such article which subjects the delinquent to a penalty denounced for such a failure. And there are many reasons why that proposition fails to commend itself to our judgment.

[2] A reasonable sensible meaning should be attributed to a statute in preference to one which is irrational and improbable. Madden v. Lancaster Co., 65 Fed. 188, 195, 12 C. C. A. 566, 573; Omaha Water Co. v. City of Omaha, 147 Fed. 1, 13, 77 C. C. A. 267, 279, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; Armour Packing Co. v. United States, 153 Fed. 1, 18, 21, 82 C. C. A. 135, 152, 155, 14 L. R. A. (N. S.) 400; Lafayette Co. v. Wonderly, 92 Fed. 313, 316, 34 C. C. A. 360, 363; Webber v. St. Paul City Ry. Co., 97 Fed. 140, 143, 38 C. C. A. 79, 82. The penalties denounced by section 20 of the act to regulate commerce as amended by the act of June 18, 1910 (36 Stat. 556), for the failure to file this monthly report, are the same as those prescribed by the same section for the failure of a carrier to file its annual report. They are $100 for each and every day the carrier shall continue to be in default with respect thereto. The annual report requires such a vast amount of information, so many statistics and details, that it is improbable, if not impossible, that any carrier could ever make such a report without some unintentional omission of information required and some mistakes in the information given. If the failure to file an annual report without such an omission and without any mistake or misinformation therein is such a failure to file an annual report as makes the carrier liable for the penalties, it must be difficult, if not impossible, for any carrier to escape them, and it is incredible that the Congress intended to subject carriers to the forfeitures prescribed for the failure to file these annual reports on account of such inadvertent omissions or mistakes in them. If the Congress did not so intend in the case of the annual report, it probably did not have that intention in the case of the monthly report, for the same penalties are prescribed in the same section for the failure to file each.

The penalties are $100 for each and every day the default in filing the report continues. If these penalties are incurred for failure to

file the report, as the statute reads, the act of Congress is neither unreasonable nor excessively drastic, for the carrier knows, or may readily ascertain, whether or not it has filed its report in due time, and hence it is easy for it to prevent any continuing default. But, if these penalties are incurred by its innocent omission from or mistake in the specifications of excessive service in the report filed by the carrier, the statute becomes irrational and unduly oppressive, for the carrier is not aware and will not have notice of such unintentional omissions and mistakes when it makes its report, and yet for each omission or mistake it may incur a penalty of $100 every day for at least 360 days, or $36,000, and thus an honest error of law or mistake of fact in making the report may easily entail a penalty of $36,-000, while 'a willful delay to file the report immediately and under oath would be limited to $100 or $200. Indeed, if the construction claimed by counsel for the government is the true interpretation of this act, the United States could recover of the defendant for its omission in this case $100 for each day between November 30, 1911, and September 14, 1912, when the complaint in this case was filed, or $28,900. Such an interpretation of this act of Congress renders it so unjust and oppressive that we cannot think that Congress intended that it should receive such a construction.

Again, this amendment of June 18, 1910 (36 Stat. 556), created and penalized a new offense, the failure of a carrier to file its monthly or periodical report of instances of the excessive service of its employés within the time fixed by the Commission.

[4] A statute which creates a new offense and prescribes its punishment must state clearly the persons and acts denounced. An act which was not an offense by the expressed will of the legislative body before it was done may not be justly or lawfully made so by construction after it is committed, either by the introduction into the statute of declarations, or the expunging therefrom of words or terms, by the judiciary. Congress might have modified this clause which describes and limits the offense, to wit: "If any such carrier shall fail to make and file any such periodical or special report within the time fixed by the Commission, it shall be subject to the forfeitures last above provided," so that it would have read: "And if any such carrier shall fail to make and file any such periodical or special report within the time fixed by the Commission, or shall omit to specify in any such report it files any instance of excessive service required to be reported therein, it shall be subject to the forfeitures last above provided." But it did not do so, the legal presumption is that it did not intend to do so, and it is not the province of the judiciary thus to amend the statute and by such amendment to create and punish another class of offenses. Nothing comes to mind more appropriate to the determination of the question here at issue than the familiar words of Chief Justice Marshall:

"Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially, in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle

that a case which is within the reason or mischief of a statute is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated." United States v. Wiltberger, 18 U. S. (5 Wheat.) 76, 95, 5 L. Ed. 37; United States v. Ninety-Nine Diamonds, 139 Fed. 961, 964, 72 C. C. A. 9, 12, 2 L. R. A. (N. S.) 185; First National Bank of Anamoose v. United States, 206 Fed. 374, 376, 124 C. C. A. 256, 46 L. R. A. (N. S.) 1139.

[3] The natural apparent meaning of the terms of a statute should always be preferred to any recondite signification discovered only by study, ingenuity, and strong desire. United States v. Ninety-Nine Diamonds, 139 Fed. 961, 964, 72 C. C. A. 9, 12, 2 L. R. A. (N. S.) 185; First Nat. Bank of Anamoose v. United States, 206 Fed. 374, 376, 124 C. C. A. 256, 46 L. R. A. (N. S.) 1139. The natural apparent meaning of this statute is that Congress relied, and intended to rely, upon the oath to the periodical report and the penalty for perjury in willfully falsely making it, as security for the completeness and truth of the report, and upon the penalty for the failure to file it as security for its filing alone. The terms of the statute are plain, and they fail to declare the innocent omission of an instance of excessive service from or the mistake in a report an offense punishable by the fines it specifies. Reason and authority alike teach that the act of omitting from a periodical report filed in good faith an instance or item which should have been included therein, or a mistake in the information which the report contains, is not the offense of failing to file any such periodical report. United States v. Four Hundred Twenty Dollars (D. C.) 162 Fed. 803, 804; Bonnell v. Griswold, 80 N. Y. 128, 132, 133; Pier v. Hanmore, 86 N. Y. 95, 100; Matthews v. Patterson, 16 Colo. 215, 26 Pac. 812, 813; Whitney Arms Co. v. Barlow, 63 N. Y. 62, 20 Am. Rep. 504.

And the conclusion is that an omission by a carrier from the periodical report of the instances of excessive service of its employés made and filed in good faith within the time prescribed therefor by the Interstate Commerce Commission under the amendment of section 20 of the act to regulate commerce (36 Stat. 556), of one or more instances that should have been included therein, or any mistake of law or fact therein made in good faith, does not subject the carrier to liability for the penalties or forfeitures denounced by that amendment for the failure to file a periodical report.

The judgment below must therefore be reversed, and the case must be remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion; and it is so ordered.