## R. E. HAMILTON & SONS CO. et al. v. MOSS-JELLICO COAL CO.

(Circuit Court of Appeals, Sixth Circuit. February 9, 1921.)

No. 3394.

1. **Appeal and error ☞977(5)—Denial of new trial reversible only for abuse of discretion.**

An exercise of discretion by the trial judge in overruling a motion for new trial cannot be reviewed, but relief can be had only for failure to exercise judicial discretion; that is, for an abuse of it.

2. **Appeal and error ☞994(1), 995—Evidence cannot be weighed.**

The Circuit Court of Appeals cannot weigh the evidence or pass on the credibility of the witnesses.

3. **Sales ☞52(5)—Evidence held to sustain finding that acceptance of orders was conditional.**

In an action for refusal to deliver the coal ordered by plaintiffs, which orders plaintiff claimed defendant had accepted by partial deliveries thereof and by the course of dealing, evidence *held* to sustain the jury's finding that the shipments were made on the assumption that pending negotiations for a contract for defendant's entire output would be consummated and that the acceptance was conditional on the consummation of those negotiations.

4. **New trial ☞77(1)—Prejudice of jurors against nonresident held not shown.**

Where plaintiffs and their attorneys were nonresidents of the district, but made no application for change of venue, the fact that the officers of the defendant coal company and its counsel were prominent residents of the mountain district of the state, and that the mountaineers (as asserted) were a clannish people, does not show that the verdict for the defendant was the result of the jurors' prejudice, especially where it did not appear how many of the jurors were from the mountains, and plaintiff's counsel disclaimed any suggestion that improper influences were intentionally brought to bear upon them.

5. **Evidence ☞110—Held admissible to show attempt to fabricate evidence of contract.**

In action for failure to deliver coal ordered by plaintiffs, where the defense was that the orders were accepted only on condition that pending negotiations resulted in the sale of their output to plaintiffs, evidence that plaintiffs' general manager had written a letter, the carbon copy of which he retained, so his files would show a contract for the output, while he destroyed the original, is admissible, though the witness could not give the language of the letter.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action by the R. E. Hamilton & Sons Company and others against the Moss-Jellico Coal Company for breach of contract. Judgment for defendant, and plaintiffs bring error. Affirmed.

L. J. Crawford, Jr., of Newport, Ky. (Froome Morris, of Cincinnati, Ohio, and L. J. Crawford, of Newport, Ky., on the brief), for plaintiffs in error.

T. G. Anderson, of Middlesboro, Ky. (M. H. Rhorer, of Middlesboro, Ky., and J. M. Robsion, of Barbourville, Ky., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. On various dates from August 7, 1916, to September 5, 1916, both inclusive, plaintiff's assignors, who were jobbers and brokers in coal at Detroit, sent defendant, a coal-mining company in Kentucky, eight separate written orders for specified amounts and kinds of coal, aggregating 111 cars, in response to seven of which orders defendant made shipments aggregating 11 cars; no shipment being made in response to the eighth order. This action was brought for defendant's failure and refusal to deliver the remaining 100 cars; plaintiff asserting an unconditional contract to make such deliveries, through an alleged acceptance of the various orders by the shipments made on seven of them, and, as to the last order, by the course of dealing as to the earlier ones. Defendant admitted the receipt of the orders, the making of the shipments, and refusal to make further deliveries. It denied, however, that it had unconditionally accepted any of the eight orders, asserting (to quote the language of plaintiff's brief):

"That the parties had had certain negotiations looking to an output contract whereby plaintiff would take, at stipulated prices, all the coal of defendant's mine, with some exception, and that it was understood and agreed that the orders were not to be binding unless an output contract was consummated."

As counsel correctly say:

"This left the single simple defense that the orders were conditional upon the signing of an output contract. Defendant contended that they were so conditioned, and plaintiff contended that they were unconditional, and that all negotiations concerning an output contract had ceased before any order was sent in or coal shipped."

It is conceded that no output contract was ever made. The issue thus raised was submitted to the jury, under instructions not excepted to then nor criticized now. The jury found for defendant, so accepting its contention and rejecting that of plaintiff.[1] Plaintiff moved for a new trial, which was denied.

[1] 1. The grounds of the motion for new trial, so far as now important, are that the verdict is against the law, against the evidence, not supported by sufficient evidence, and the result of prejudice on the part of the jury. It is elementary that an exercise of discretion by the trial judge in overruling a motion for new trial cannot be reviewed. Relief can be had only for a failure to exercise judicial discretion; in other words, for an abuse of it. Robinson v. Van Hooser (C. C. A. 6) 196 Fed. 620, 627, 116 C. C. A. 294; Pugh v. Bluff City Excursion Co. (C. C. A. 6) 177 Fed. 399, 101 C. C. A. 403.

[2] The denial of motion for new trial was not, in our opinion, an abuse of discretion. The verdict was not against the law, provided the jury's finding upon the facts is accepted. The proposition that

---

[1] The verdict also awarded defendant $485.51 on a counterclaim for coal delivered to plaintiff and not paid for. This was concededly proper, if defendant was right on the main issue.

the evidence was insufficient, or that the verdict was against the evidence, requires not only a weighing of the evidence, but a passing upon the credibility of witnesses, which we cannot do. Plaintiff made no motion for a direction of verdict in its favor; but, had it done so, the trial judge did not abuse his discretion in denying the motion for new trial, provided the verdict was supported by substantial testimony, even if both the trial court and this court should think the verdict against the weight of the evidence. In our opinion the verdict was clearly supported by substantial testimony.

[3] It is conceded that there had been negotiations between the parties for an output contract. The material difference between the parties is that plaintiff contends these negotiations had been definitely abandoned as early as the first part of August, and before the first orders for coal shipments were sent in; while defendant contends that the negotiations were still pending and open, that there never was an unconditional acceptance of the orders in question, but that their acceptance was conditioned upon the making of written contract for mine output, and that the shipments had were made in the expectation and belief that the output contract would be made. There was substantial testimony tending to support defendant's contention. The orders in question were never accepted, unless by force of the partial shipments; assuming that partial shipment prima facie showed acceptance, such showing was not conclusive, although the burden of showing the contrary was on defendant.

The witness Craven, who participated in negotiating the contract on the part of plaintiff's assignors, testified that between August 17th and 30th he went with Sallee, now plaintiff's general manager and then one of plaintiff's assignors, to the office of defendant's counsel to "fix up a contract"; that Sallee then said he wanted to go to Louisville to see what his manager there could do toward handling some of the coal, and then he would fix up a contract and send it back to Middlesboro, where defendant seems to have had its office; that Sallee told the witness to keep the orders which had already been entered, and that he would send orders until the contract was fixed up; that, on defendant's president being told of this, he stated that he wished the contract made before any more orders were taken, and did not wish to ship until he was sure he was to be taken care of all through the year. The counsel referred to testified that defendant's president, in the presence of Sallee, instructed the witness to prepare a contract with reference to a sale of a portion of the output of the mine, with certain restrictions, and that Sallee expressed a preference to have the contract drafted in Louisville, stating that he would have it prepared and mailed back to defendant's president, who in turn would present it to counsel for approval.

The testimony of this witness was expressly corroborated by the testimony of defendant's president, who testified that, the contract not having been sent, he wired Sallee, a week or ten days later, to forward it. The witness Bennett testified that Sallee on August 7th stated that he had a contract with defendant all but signed up. The witness Hubbard also testified that Craven on September 5th request-

ed the witness to draw up a contract for a portion of the output, and was told that the witness had no authority to do so, that it was left to the manager or president at Middlesboro, where the contract would be drawn up and signed by the parties. On August 5th, two days before the first order for coal, plaintiffs wrote defendant that they had "practically sold the output of your mine and expect to send you orders covering the same within the next day or two." The testimony referred to, in connection with the other testimony in the case, would support an inference that acceptance of the orders, except so far as covered by the shipments, was postponed until the output contract should be made.

[4] The contention that the verdict was palpably the result of prejudice on the part of the jury is too unsubstantial to justify serious consideration. It is based on the proposition that Moss, defendant's president, was also president of another coal company; that the witness Bennett was a director in defendant company and president of another company; that the witness Hubbard had been in the coal business in that locality for 15 years; that all three "have lived in the mountains all their lives," and are "obviously men of standing and influence in the mountains, and inferentially are widely known"; that defendant's counsel were all prominent and successful practitioners from the mountain community, and known throughout the mountains; that at the time of the trial one of defendant's counsel, who addressed the jury, was running for Congress in a district composed exclusively of mountain counties, and was later elected by a large majority; that the plaintiff, on the other hand, lived and did business at Detroit, Mich., one of their counsel living and practicing in Cincinnati, and two on the Kentucky side of the river; and that the Kentucky mountaineers are "notoriously clannish." The record does not show how many of the jurors were from the mountains; presumably some were. Plaintiff's counsel expressly disclaim any suggestion that improper influences were purposely brought to bear upon the jury. There was no motion for a change of venue. The trial court, to whom the motion for new trial was addressed, knew more about the surrounding conditions than this court can know. To say the least, the trial judge was presumably unable to conclude that Kentucky mountaineers, even if as "clannish" as plaintiff asserts, would be so moved by prejudice as unfairly to champion the cause of coal-mining corporations.

[5] 2. The witness Craven was permitted to testify that in October, 1916, Sallee told the witness that he was sorry he had not signed the contract with defendant; that Sallee, after getting some second sheets like those used in the previous July, dictated a letter to the defendant, dating it as in that month, saying "This is what I wanted with the second sheets. I wanted to complete my files the same color of the second sheets that the original copies were written on;" that he then destroyed the original letter and kept the carbon copy to complete his files, saying, "Now, that completes our contract with them." The stenographer's testimony substantially corroborated that of Craven. This testimony is challenged as irrelevant. It was

taken subject to objection and exception, although the ground of the objection was not stated, and we would thus not be bound to consider it. In our opinion the testimony was relevant. Sallee had testified that in July or August he told defendant's president that "I would write him a letter and we would consider it a contract. I did write him a letter." The criticized testimony (if believed) tended to show that Sallee understood in October that the unfilled orders had not been unconditionally accepted, and that they were being held awaiting the making of such contract, and that Sallee wrote the letter in question with the design of aiding a false and fraudulent assertion that a contract had been reached. The facts that the letter in question was never actually sent, and that no attempt was made on the trial to prove such sending, and that the language of the letter could not be given by the witness, did not make the testimony irrelevant. The facts last referred to affected only the credibility of the testimony. The act itself was relevant, if believed to have been committed. That question was for the jury.

We find no error in the record, and the judgment of the District Court is affirmed.