## EAST HARLAN COAL CO. v. R. E. HAMILTON & SONS CO.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1922. On Motion to Modify Opinion, February 10, 1922.)

No 3564.

1. **Sales ⚖=93—Orders to coal mining company in contemplation of contract abandoned by subsequent contract.**

   Orders by dealer to coal mining company stating terms given pending negotiations contemplating a contract by which the dealer was to take the mine output must be deemed abandoned by a subsequent contract for handling all the coal on stated commission unless such contract provide for the orders, or be reformed to provide therefor.

2. **Evidence ⚖=450(6)—Contract held unambiguous, and oral evidence improperly admitted.**

   Where, pending negotiations between a coal dealer and a mining company contemplating a contract to handle the mine output, orders stating certain terms were given and accepted during the months of July and August, but negotiations on the proposed basis failed, a written proposal on September 11th consisting of plaintiff's proposal "to handle output of your mine for one year from July 1st" on an 8 per cent. commission basis, all former contracts declared canceled, and defendant's written acceptance thereof, created a plain and unambiguous contract, so that it was error to admit evidence of the dealer's claim that the former orders were not included.

3. **Appeal and error ⚖=1050(1)—Parol evidence varying contract held not prejudicial as to construction of contract, but harmful as affecting damages.**

   Where a contract between dealer and mining company for handling the mine output on commission canceled the terms of orders theretofore given, but required the filling of such orders, error in admitting parol evidence of the dealer's claim that the orders were separate contracts from breach of which he was damaged *held* not prejudicial as affecting the construction of the contract as to the company's duty to deliver, but harmful as affecting the measure of damages for failure to fill the orders.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action by the R. E. Hamilton & Sons Company against the East Harlan Coal Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial, unless plaintiff enter remittitur.

On January 12, 1917, R. E. Hamilton & Sons Company, a Michigan corporation, brought an action in the United States District Court for the Eastern District of Kentucky against the East Harlan Coal Company, a Kentucky corporation, to recover damages for breach of contract for failure on the part of the defendant to ship and deliver coal upon a large number of contracts or orders given in July, August, and September of 1916 by the R. E. Hamilton & Sons Company, then a partnership, to the defendant corporation and accepted by it. It is further averred in the petition and in the amended petition that the plaintiff corporation was organized by and is the successor of the partnership doing business in 1916 under the firm name of R. E. Hamilton & Sons Company, and as such successor it has taken over all the business, property, and assets of that partnership and entitled to all its rights and benefits in and under these contracts or orders. Later the plaintiff

---

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

277 F.—22

dismissed its action as to all of these orders, except nine, one of which was given in July, seven in August, and another on the 8th day of September, 1916. To this petition the defendant filed an answer and counterclaim. The counterclaim is based upon a balance of $1,397.86 due for coal sold and delivered to the plaintiff.

The answer further avers that whatever orders were given and accepted at prices named therein by this defendant, were given and accepted in pursuance of an oral contract for the entire output of its mine at Ages, Ky., for a period of one year from August 1, 1916, to August 1, 1917 except one car each day which the defendant was then obligated to furnish to the Louisville & Nashville Railroad Company; that on the 11th day of September, 1916, it entered into a new contract in writing by the terms of which all former contracts entered into between said · parties were canceled and in place thereof a new agreement made by which the plaintiff was to handle the output of defendant's mine on a commission basis. The answer contained other defenses not now important to the disposition of this case.

To this answer the plaintiff filed a reply admitting indebtedness on the cause of action pleaded in defendant's cross-petition in the sum of $1,354.60, denying that any oral output contract was entered into between plaintiff and defendant, and averring that after some oral negotiations an output contract between said parties was reduced to writing and evidenced by the letter of plaintiff to defendant dated July 11, 1916, defendant's letter to plaintiff, dated July 13, 1916 and plaintiff's letter to defendant dated July 16, 1916. Plaintiff also admits the execution of the contract of September 11, 1916, but denies that this contract canceled or rescinded the orders theretofore given by plaintiff and accepted by defendant.

Evidence was offered tending to prove that negotiations for an output contract between these parties were initiated by plaintiff as early as June, 1916; that July 9th these negotiations resulted in an arrangement between the parties that the plaintiff would write a letter to the defendant embodying the terms of a proposed contract as discussed by them, for one year from August 1, 1916; that on July 11, 1916, the plaintiff submitted to defendant a proposition in writing based upon its understanding and interpretation of the oral negotiations. To this written proposition of the plaintiff the defendant replied that plaintiff's letter of the 11th inst. was satisfactory with certain exceptions relating to the division of the profits in excess of 10 per cent., and requesting that the plaintiff write another letter covering this part of the tentative agreement.

A number of letters and telegrams were exchanged between the parties in reference to this objection, and also in relation to a further objection later made by the defendant as to the time of payment, but this correspondence wholly failed to bring about any common understanding and agreement between the parties, at least as to the basis upon which the surplus profit would be divided, and thereupon the defendant notified plaintiff that, unless it met the defendant's terms as to division of surplus profits over 10 per cent. the defendant would refuse to do business on any other basis.

Mr. Hamilton, then representing the plaintiff went to Harlan, Ky., and, after full discussion of the differences between them, the contract as proposed in plaintiff's letter of July 11th was abandoned, and a wholly different contract was made. This contract is evidenced by two letters, both of which were written in the hotel at Harlan and delivered practically at the same time. These letters are as follows:

"[Letter Head New Harlan Hotel.]

"Harlan, Ky., Sept. 11, 1916.

"East Harlan Coal Co., Ages, Ky.—Gentlemen: We propose to handle the output of your mine at Ages, Ky., for the period of one year from July 1, 1916, on the following terms:

"We will secure for you prices equal to those secured by other mines in the Harlan field—that is to say, the highest market prices, and to you furnish enough tonnage to keep your mines running full time or at least as much as any other mines in the Harlan field.

"We will handle this coal on an 8% commission. basis, payments for coal to be made as follows:

"One thousand dollars ($1,000.00) to be paid on account on the 5th of the month, and the remainder on the 20th of the month for all coal shipped the previous month. There is excluded from this contract one car per day which you are obligated to furnish to the L. & N. R. R. Co. on which we are to receive no commission.

"All former contracts or agreements entered into between us for the sale of your coal are herewith canceled.

"Yours truly,                  R. E. Hamilton & Sons Co."

"[Letter Head New Harlan Hotel.]

"Harlan, Ky., Sept. 11, 1916.

"R. E. Hamilton & Sons Co., Detroit, Mich.—Gentlemen: We beg to acknowledge receipt of yours of to-day containing proposal to handle the output of our mine at Ages, Ky., for a period of one year beginning July 1, 1916, on an 8% commission basis, and to advise that the terms and conditions incorporated therein are satisfactory to us.

"Yours truly,                East Harlan Coal Co.,

"By W. W. Lewis, Pt."

On the trial of the case parol evidence was introduced over the objections and exceptions of the defendant tending to prove oral statements made by the parties prior to plaintiff's written proposition of July 11th and also oral statements made pending the negotiations resulting in the written contract of September 11th. At the close of all the evidence the defendant moved for an instructed verdict, which motion was overruled by the court. Defendant thereupon moved the court to withdraw from the jury all the testimony of the witness Sallee in regard to the verbal negotiations of July 9, 1916, and also the testimony of the witness Hamilton tending to contradict, vary, or extend the terms of the written contract of September 11th, which motions were both overruled. The jury found upon the issue joined for the plaintiff and returned a verdict in its favor for $14,437. A motion for new trial was filed and overruled, and judgment entered upon the verdict.

James H. Jeffries, of Pineville, Ky. (James H. Jeffries, of Pineville, Ky., on the brief), for plaintiff in error.

L. J. Crawford, Jr., of Newport, Ky. (Froome Morris, of Cincinnati, Ohio, and L. J. Crawford and L. J. Crawford, Jr., both of Newport, Ky., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). It is apparent from the evidence offered in the trial of this cause in the district court, both by the plaintiff and defendant, that no verbal contract was ever entered into between them on July 9, 1916, or any other date, and that neither ever had the intention or purpose of making a verbal contract.

It is equally clear that the numerous telegrams and letters exchanged between the parties, prior to September 11th, do not constitute a written contract between them. That fact fully appears by the letter written by defendant to the plaintiff on September 8th, and the testimony of Mr. Sallee explaining the plaintiff's reasons for sending Mr. Hamilton to Kentucky. His testimony in reference to this is as follows:

"We were not getting any place by correspondence, and they shut off the shipments on our orders, and our customers were demanding that we make

these shipments, and we sent him (Hamilton) down there to satisfy the East Harlan Coal Company regarding our arrangement and to make a satisfactory arrangement with them for the payment of our coal and the basis on which we should pay them. That is what he was sent down there to do."

[1] It also further appears from this evidence that the orders sued upon were accepted by defendant, pending negotiations for an output contract, and upon the assumption that such a contract would be consummated. Hamilton & Sons Co. v. Moss-Jellico Coal Co. (C. C. A.) 271 Fed. 237.

Therefore, unless the written contract of September 11th covers these prior orders or it is reformed in a proper action brought for that purpose so as to conform to the mutual intention and purpose of the parties to cover these orders, if that was their mutual purpose and intent, then these orders must fall with the abandonment of negotiations for the output contract contemplated in July and August. Hamilton Co. v. Moss-Jellico Co., supra.

It is the well-settled rule of evidence that, when persons put their contracts in writing, the written contract is, in the absence of fraud or mistake, conclusively presumed to contain all the terms and conditions agreed upon by the parties, and that the rights and the obligations of each must be determined from the contract as written. 1 Greenleaf on Evidence, § 275. This rule is well stated in Martin v. Berens, 67 Pa. 463, and quoted with approval by the Supreme Court of the United States in Bast v. Bank, 101 U. S. 93, 25 L. Ed. 794, in this language:

"Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement, and we are not disposed to relax the rule."

In Barnhart v. Riddle, 29 Pa. 96, it is said in support of the proposition that parol evidence will not be admitted to vary or contradict the terms of a written instrument.

"This rule of law is only a conclusion of reason, that that medium of proof is most trustworthy which is most precise, deliberate, and unchangeable."

This rule of evidence, so clearly and concisely stated in the cases above cited, has recently been approved, followed, and applied by this court in the case of Sudduth v. Coal Co. (C. C. A.) 268 Fed. 433–438.

Where, however, the language used in a written contract is ambiguous or uncertain, or where it becomes necessary to explain the exact meaning acquired by the use of a term in a particular art or business or the identity of a person, place, or thing, then parol evidence may be received to explain ambiguous language or trade terms or to make more definite and certain the place, person, or thing to which the contract relates, but never to vary or contradict the plain and unambiguous terms written therein.

If by mutual mistake of the parties the written contract does not state the terms of the contract agreed upon, then a court in a proper action will reform the written contract to conform to the actual agreement of the parties, but in the absence of such reformation, in an

action on the contract, the terms of the written contract must be enforced as therein written.

The contract of September 11, 1916, is plain, clear, and unambiguous in its terms. The provision in this contract, evidenced by the letter of September 11, 1916, copied into the statement of facts, specifically provides that—

"All former contracts or agreements entered into between us for the sale of your coal are herewith canceled."

That provision clearly refers to the oral negotiations and the attempt of the parties by letter and telegrams to reduce to writing the output contract along the lines contemplated in July and August of that year. However, this contract leaves nothing in doubt. It is dated September 11, 1916, but in express terms it includes and covers every transaction between the parties from July 1st of that year. The written proposition of the plaintiff dated September 11th and the written answer to that proposition by the defendant, of the same date, constitutes this written contract. The initial proposition in plaintiff's letter of September 11th is as follows:

"We propose to handle the output of your mine at Ages, Ky., for the period of one year from July 1, 1916, on the following terms."

To this letter containing this and other propositions, the defendant immediately replied:

"We beg to acknowledge receipt of yours of to-day containing proposal to handle the output of our mine at Ages, Ky., for a period of one year beginning July 1, 1916, on an 8% commission basis, and to advise that the terms and conditions incorporated therein are satisfactory to us."

The language in which the plaintiff stated this proposition and the language in which the defendant accepted the same is so clear, plain, and unequivocal that there can be no doubt as to the purpose, meaning, and effect thereof. Unless this provision was intended to include the prior orders, given between the 1st of July and the date of this contract, then the provision that the contract should cover the handling of defendant's output from July 1st of that year would be wholly meaningless, useless, and absurd.

It is clear from the evidence that the parties fully understood and appreciated the effect of this contract in relation to orders given after July 1st and prior to September 11th. The president of the defendant company testified that all deliveries made after this date were made under the contract of September 11th. This statement is fully corroborated by the fact that the shipments made on the J. & T. Hurley order were billed at 80 cents a ton, the price that Hurley was to pay to the plaintiff, instead of $1 a ton, the price the plaintiff was to pay the defendant for this coal under the proposed output contract of July 11th. That the plaintiff had the same understanding is evidenced by the letter written by Sallee, vice president and general manager of the plaintiff, to the defendant on September 18, 1916, a part of which letter is as follows:

"The last clause of our agreement does not state in any manner whatsoever that it cancels all former orders, only in so much as it pertains to the basis on which we sell your coal."

[2, 3] It necessarily follows that it was error to admit oral evidence to change, alter, or explain the plain and unequivocal terms of this written contract. However, in view of the fact that this contract is subject to no construction other than that the defendant by its terms was required to fill these prior orders, it does not necessarily follow that the introduction of oral evidence tending to prove that fact was prejudicial error for which this entire judgment must be reversed.

The plaintiff predicated this action upon the breach of these several order contracts, which were merely incident to the output contract of September 11, 1916, and which must fall or stand with that contract. On the other hand, it was the claim of the defendant that this output contract entirely abrogated these prior orders, so that it is now hardly in position to claim that the court erred in not submitting to the jury the question of whether it had or had not breached that output contract as a condition precedent to plaintiff's right to recover. The court submitted the issues to the jury just as the parties framed them by their pleadings and the evidence. It does not appear that any exceptions were taken to the charge of the court until after the jury retired, or, for that matter, not until the motion for a new trial was filed. In a letter dated September 15, 1916, the defendant admitted that it had agreed to fill the J. & T. Hurley order, notwithstanding its contention that this as well as all the other prior orders had been canceled by the contract of September 11th. On September 21st the defendant wrote the plaintiff another letter in which it positively stated that it would not fill the prior orders, and in reply to that letter the plaintiff wrote to the defendant on September 29th that, after the writer (Mr. Sallee) had taken up the matter with Mr. Hamilton and Mr. Craven, it had decided to continue to send orders at the current market price until the expiration of the agreement. This positive statement on the part of the defendant that it was not required to fill and would not fill prior orders under the September agreement and the reply of plaintiff to that letter are susceptible, at least, of the interpretation that defendant's letter of September 21st applied only to prior orders other than the Hurley order, which it had already positively stated in its letter of September 15th it had agreed to fill.

This written admission of the defendant that it had agreed and obligated itself to fill the Hurley order, regardless of its construction of the September output contract, is sufficient to justify a recovery of damages by the plaintiff for the defendant's failure to fill that particular order as a separate and distinct contract, but no such admissions were made by the defendant in reference to any of the other orders. Therefore the plaintiff's right to recover, if at all, for failure of the defendant to fill these other prior orders, must be based upon a breach by defendant of the September output contract. While failure to fill these orders would be some evidence tending to prove such a breach, nevertheless no breach of that contract was averred by the

plaintiff, and no such question was submitted to the jury. It further appears from the evidence that plaintiff notified the defendant to discontinue shipments upon two of these orders, and never thereafter requested it to recommence shipments thereon. That, perhaps would not be important if a breach of the September contract had been averred and proven, but would be fatal to a recovery upon them as separate contracts. The introduction of oral evidence tending to establish these prior orders other than the Hurley order, as separate and independent contracts, unmodified or unaffected by the September output contract, was error prejudicial to the defendant, for which the entire judgment must be reversed unless a remittitur be entered for the highest amount of damages that the jury, under the evidence in this case, might have included upon these orders, in its general verdict.

In view of the contention of the defendant as it appears in its answer, and the evidence offered by it on the trial of this cause, its admission as to the Hurley order must be accepted as an admission on its part that that order was separate and apart from the September agreement; nevertheless it does not necessarily follow that the damages sustained by plaintiff should be ascertained by the same rule of evidence as to the measure of damages that would apply if it were in fact a separate and distinct order, having no reference whatever to any output contract.

There seems to be no conflict in the evidence upon the proposition that both parties understood that the September output contract did affect the Hurley order in so far as it pertained to the basis upon which plaintiff was to sell defendant's coal. Reference has heretofore been made in this opinion to the letter of Mr. Sallee and the evidence of the president of the defendant company upon this subject, also to the fact that the coal shipped upon the Hurley order was billed to the plaintiff at 80 cents per ton instead of $1 a ton as contemplated by the original Hurley order. Therefore, to this extent at least, even under the issues as joined by the pleadings and submitted to the jury, for which the trial court was in no wise responsible, the damages of the plaintiff for failure to fill the Hurley order were properly subject to ascertainment with reference to this later output contract.

While the admission of oral evidence tending to vary, extend, or explain the written contract was not prejudicial to the defendant in so far as that evidence tended to establish its obligation to fill the Hurley order, for it had voluntarily admitted that fact in its letter of September 15th; nevertheless, in so far as that evidence would affect the measure of damages, it was prejudicial.

Under the terms of this output contract of September 11th, the plaintiff would ordinarily be entitled to recover as damages but 8 per cent. commission upon that order. In this particular case, however, the plaintiff had sold this coal to the Hurley Company long prior to the making of this September contract, and, even though by the terms of that contract the defendant had as between plaintiff and defendant accepted that order as its own, that fact alone would not release the plaintiff from liability to Hurley for failure to fill that order. This, of course, the parties to this contract must have fully known and

understood at the time the contract was made. The plaintiff therefore was entitled to plead and prove as special damages whatever loss it had sustained by reason of its liability to the Hurley company. While the plaintiff's petition contains no such averment as to special damages, nevertheless the case was tried upon substantially the same theory as it would have been tried had the petition contained such averment. The evidence offered by the plaintiff tended to prove that it had sustained special damages by reason of its legal liability for its breach of the Hurley order of not less than $7,658, and not more than $23,202. It necessarily follows that, if this judgment is reduced to the least sum which, under the evidence, the jury could have found the plaintiff suffered as special damages by reason of the failure of the defendant to fill the Hurley order, then the admission of this oral evidence cannot be prejudicial to the defendant. Further than this, under the peculiar state of this record, the defendant ought not to be heard to complain.

The lowest damages that the jury could have found upon the Hurley order in favor of the plaintiff under the evidence in this case would be $7,658. This must be reduced by the amount claimed by defendant in its cross-petition, to wit, $1,397.80, which, deducted from $7,658, would leave a balance of $6,260.20.

If the defendant in error is willing to accept this amount with interest, and within 30 days from the filing of this opinion enter in the district court a remittitur for the balance of this judgment over and above $6,260.20, and cause a certificate to be issued out of that court and filed in this court showing that such remittitur has been entered, this judgment to the extent of $6,260.20, with interest, will be affirmed; otherwise, for the reasons above stated, the entire judgment will be reversed, and cause remanded for a new trial.

On Motion of Defendant in Error to Modify Opinion and for an Extension of Time.

PER CURIAM. This motion is based upon the assumption that the highest amount that under the evidence could have been awarded by the jury as damages for the failure of the Harlan Company to fill the orders, other than the Hurley order, constitutes the full amount of the remittitur ordered. On the contrary, the court included, as a part of the amount ordered to be remitted, not only the entire amount of damages that might possibly have been allowed for breach of these orders as separate contracts, but also all that part of the verdict and judgment in excess of the least sum, which, under the issue as framed and the evidence, the jury could have found the plaintiff suffered as special damages by reason of the failure of the defendant to fill the Hurley order.

This conclusion, of course, is based solely upon the state of this record, and, if a retrial of this cause is to be had, the pleadings must be amended to conform with this court's construction of the output contract of September 11, 1916, and plaintiff's right to recover upon any

of these orders, including the Hurley order, must be based upon a breach by the defendant of this output contract.

The motion of the defendant in error to modify the original opinion filed in this case is overruled, and the time in which defendant in error must enter the remittitur ordered, if it does elect to enter such re-, mittitur, is extended for 15 days from the entry of the order of this court overruling this motion.