STATE, RESPONDENT, *v.* MOTT, APPELLANT.

(No. 5,613.)

(Submitted January 7, 1925. Decided February 26, 1925.)

[233 Pac. 602.]

*Criminal Law—Gaming—Evidence—Witnesses—Cross-examination — Rebuttal — Detectives—New Trial—Newly Discovered Evidence—Proper Denial.*

Criminal Law—Witnesses—Cross-examination—When Proper.
1. In a prosecution for permitting gambling to be conducted on the premises of defendant, where his wife had testified that while certain games were permitted to be played, there never had been any gambling permitted, cross-examination as to the manner in which the games were conducted and as to her knowledge of what took place was proper.

Same—Rebuttal and Impeachment on Collateral Matter—Rule not Applicable, When.
2. The rule prohibiting rebuttal and impeachment on a collateral matter is confined to matters brought out on cross-examination, and has no reference to answers brought out on examination in chief.

Same—Evidence of Other Offenses—Duty of Court to Caution Jury.
3. Where facts brought out on a criminal trial have a tendency to show the commission of other offenses than the one under investigation, the court should instruct the jury as to the purpose for which such evidence might be considered and that the defendant could be convicted only on proof of every material element of the crime charged.

Same—Gaming—Physical Condition of Premises—Evidence—Admissibility—Rebuttal.
4. Defendant charged with having permitted gambling on his premises having testified that there had never been a buzzer or alarm system in his place, contradicting one of the state's witnesses, testimony in rebuttal by a former owner of the place that there had been at one time such a system was proper.

Same—Evidence of Other Offenses—Instructions.
5. Since evidence of the commission of offenses like the one for which defendant is on trial is admissible for the purpose of showing that the act complained of was a part of a general plan or system for evading the law, an instruction that the jury might consider such testimony for that purpose was unobjectionable,

---

1. Limiting cross-examination to scope of direct, see note in 17 Ann. Cas. 4.

2. Impeachment of collateral and immaterial matter given on direct examination, see note in 6 Ann. Cas. 715.

5. Evidence of other crimes in criminal case, generally, see note in 62 L. R. A. 193.

[72 Mont. 306.]

coupled as it was with other instructions that defendant could be found guilty only of the crime charged in the information.

Same—Detectives as Witnesses—Evidence—How to be Viewed—Not Proper Subject of Instruction.

6. While it is proper to inquire of persons employed to detect crime as to their employment, the manner and amount of their compensation and their interest in the outcome of the prosecution, for the purpose of attacking their credibility as witnesses, such matters cannot be made the subject of an instruction commenting on the manner in which the jury should view their evidence, but advantage of such facts may be taken in argument.

Same—Offered Instruction Covered by Other Instructions — Refusal Proper.

7. Refusal of an offered instruction to the effect that the jury could convict defendant only after finding beyond a reasonable doubt that he had knowledge of the particular game charged to have been played on his premises and with such knowledge permitted it, was not error, the same subject having been fully covered by other instructions.

Same — Evidence of Other Offenses — Instruction — Modification Non-prejudicial.

8. Modification of an offered instruction that permitting a gambling game to be played on his premises on another occasion than the one for which defendant was on trial would not warrant a verdict of guilty, by adding the words "but evidence concerning same may be considered by you as defined" in the instructions, *held* nonprejudicial.

Same—New Trial—Newly Discovered Evidence—Proper Denial.

9. Alleged newly discovered evidence *held* insufficient to warrant the granting of a new trial, it appearing to have been merely cumulative and impeaching, and not so material as probably to produce a different result upon a retrial.

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

J. E. MOTT was convicted of permitting a game of stud-horse poker to be played for money, checks, *etc.*, in his place of business, and appeals. Affirmed.

*Messrs. Shea & Wiggenhorn,* for Appellant, submitted a brief; *Mr. Thos. F. Shea* argued the cause orally.

---

6. What are proper subjects of instructions to juries, see note in 72 **Am. Dec.** 538.

9. What is cumulative evidence within rule excluding it when offered in support of motion for new trial, see note in **Ann. Cas.** 1913D, 157.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for the State, submitted a brief; *Mr. Angstman* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

J. E. Mott was convicted of the crime of permitting a game of stud-horse poker to be played for money, checks, *etc.,* in his place of business at Billings, on March 24, 1924. His appeal is from the judgment and from an order overruling his motion for a new trial.

Appellant has made twelve assignments of error: Nos. 1, 2, 3 and 4 deal with a series of questions on cross-examination, all referring to the same subject matter, and will be treated jointly; No. 5, with impeachment testimony; and No. 6, with the admission of certain evidence in rebuttal. No. 7 assigns error in denying a motion for a directed verdict; Nos. 8, 9, 10 and 11 deal with instructions; and No. 12 is based on the order overruling motion for a new trial.

The place of business involved is known as the Brunswick pool-hall, though there is neither pool nor billiard-table therein. It consists of a street floor and basement. The front is occupied on the one side by a cigar-stand and on the other a soda-fountain and small office partially separated from the rear by an archway. Back of the arch the room is furnished with tables and chairs for card games, and the rear is used as a restaurant. The basement is reached through a door in the corner back of the restaurant. The basement is divided into three parts, so that in traversing it one passes through an intermediate door and room, then through a door leading into a small room in which one or two tables are installed for card-playing. It was in this small basement room that the game complained of is alleged to have been played.

1. Mrs. J. E. Mott testified, on direct examination, that she was [1] in charge and conducted the business in the absence of her husband, who operated a ranch. This condition had

existed for something like three years prior to March 29, 1924. She likewise testified, in chief, that the room back of the archway was devoted to card-playing, the men playing rummy, cribbage, checkers or anything they saw fit, and that a day man and a night man were employed to "run the card games." Speaking of the tables downstairs, she said, "Those were conducted in the same way." Having so testified, on cross-examination the witness was interrogated as to the manner in which the games were conducted and her knowledge thereof. These questions form the basis for assignments Nos. 1, 2, 3 and 4, and are as follows: "Q. And do you know what they do back there? (No answer.) Q. And what do you say they do with the chips? A. Well, don't know how they handle the games. I just issue those chips and the men look after the games. Q. Do you handle the money? A. Yes."

The court then inquired what these chips referred to were, eliciting the information that they were brass checks stamped, "Good for twenty-five cents in trade," redeemable in any merchandise sold in the place of business. Further cross-examination brought out the fact that the witness issued the checks in bulk to the men in charge, charging them with the amount thereof, and receiving back either checks or money to the amount thereof at closing time; that no particular men had charge of the games in the basement, but "just some one of the players." To this line of cross-examination appellant interposed the general objection that the same was immaterial, improper cross-examination, and would tend to prejudice the jury by attempting to establish the commission of a crime other than the specific offense charged.

While the cross-examination was on matters not directly material to the charge, they were connected therewith and tended to enlighten the jury as to the knowledge of the witness and her credibility on matters directly in issue.

Section 10665, Revised Codes of 1921, provides that "The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith,"

*etc.* And this court has properly said: "The right of cross-examination is a substantial one and may not be unduly restricted. It may extend not only to facts stated by the witness in his original examination, but to all other facts connected with them which tend to enlighten the jury upon the question in controversy." (*State* v. *Biggs*, 45 Mont. 400, 123 Pac. 410.)

The rule is laid down in Cyc. that "One who has brought out improper testimony on the examination in chief of his witness cannot complain of the cross-examination of the witness on the same subject." (40 Cyc. 2496.)

By her examination in chief as to the manner in which the games played were conducted, coupled with her positive statement that there was never any gambling in the place, counsel opened the door and invited cross-examination as to the manner in which the games were conducted and as to her knowledge of what took place on the premises, in order that the jury might determine the credit to be given to her statement concerning gambling, and the inquiry complained of became a legitimate exercise of the right of cross-examination.

2. Again, Mrs. Mott testified on direct examination, that she [2] closed the place at midnight or shortly thereafter, leaving the porter in charge, and that when she left no customers were allowed to remain, except, occasionally, those finishing a rummy game or two, which would take but a short time. She was asked on cross-examination whether it was not a fact that boys came out of the place as late as 4:30 in the morning. She answered in the negative. On rebuttal one Holmes, a boy of sixteen was permitted, over objection that it was immaterial and improper rebuttal, to testify that such was the fact. The court permitted the answer on the statement of counsel that it went to the credibility of the witness.

Had the witness not testified as she did in chief, the cross-examination indicated and the rebuttal testimony would have been improper, as the subject matter was clearly collateral to the issues. (*State* v. *Diedtman*, 58 Mont. 13, 190 Pac. 117.)

But the rule prohibiting rebuttal and impeachment on a collateral matter is confined to matters brought out on cross-examination. Wharton states the rule as follows: ''The general rule is that when a witness is cross-examined on a matter collateral to the issue, his answer cannot subsequently be contradicted by the party putting the question; but the limitation only applies to answers on cross-examination. It does not affect answers to the examination in chief.'' (Wharton's Crim. Evidence, 8th ed., sec. 484.) This distinction is recognized in the *Diedtman Case,* and in *State* v. *McConville,* 64 Mont. 302, 209 Pac. 987, relied upon by appellant.

While the question on rebuttal was similar to that asked on cross-examination, it was asked to bring out a statement directly contradicting the witness on her statement that the place closed at midnight or shortly thereafter, and that, when she left, no customers were left in the place, and tended to impeach her credibility and to show her lack of knowledge of happenings in and about the place. The evidence complained of was clearly admissible.

Where the facts thus brought out, as well as those heretofore [3] discussed, had a tendency to show other crimes than the subject matter of the prosecution, the court should, of course, properly instruct the jury as to the purposes for which such evidence might be considered and that the defendant could only be convicted on proof of every material element of the identical crime charged; this the court did in its instructions Nos. 6, 7 and 8.

3. One Beardsley testified as to the physical conditions existing [4] in and about the basement card-room and, in this connection, that there was a ''buzzer'' or ''alarm'' just back of the representative of the house, connected by electric current to three push-buttons, one near the telephone upstairs, one in the office and one on the edge of the lunch counter, all in plain sight; that he had heard this system operated on two occasions— once by Mott when he was having it repaired and on the occasion of a raid on the place.

Mott testified in his own defense that he had never seen such buzzer or push-buttons; there was no such system in the building and never had been.

On rebuttal a former proprietor of the place was permitted to testify, over objection, that he installed the buzzer system, and that it was in the building when he and his partner sold to Mott. While the time referred to, perhaps six years prior to the date of the alleged crime, was remote, it directly contradicted Mott in his statement that there "never" had been such a system in the building, and, unlike a system in which the buzzer and push-buttons are reversed for the convenience of the players in calling the house, proof of such a system had a tendency to establish knowledge on the part of Mott as to what was taking place in the basement, and was directly, and not collaterally, connected with the issues involved. If the operations in that room were innocent, no such alarm system would be necessary.

What was said by this court in *State* v. *Rose*, 40 Mont. 66, 78, 105 Pac. 82, is pertinent here: "The testimony of witnesses as to the physical conditions in and about the building where the telegraph company conducted its business, both before and after its installation there, was competent. * * * This testimony served to illustrate the manner in which the business was carried on and the nature thereof."

While this testimony might have properly been offered in the state's case in chief, there was no occasion for doing so, but after Mott had contradicted the testimony of Beardsley, it was proper for the purpose of impeaching the witness.

4. Appellant contends that the evidence was insufficient to warrant the submission of the case to the jury. We have examined the evidence and find there is no merit in the contention.

5. Instruction No. 7, given, reads as follows: "You are instructed that evidence has been introduced in this case concerning gambling games testified to as having been played in and about the premises mentioned in the information,

prior to the twenty-ninth day of March, 1924. This evidence may be considered by you for the purpose of determining whether or not the game charged in the information was played as a part of a scheme or plan of the defendant to permit gambling games to be played in and about the premises mentioned in the information, if such game was played, whether it was played in the course of business as it was conducted at said place by the defendant, and for the purpose of showing circumstances, which, if you find them to be true, might be considered by you in determining whether or not the defendant knowingly permitted the game alleged in the information to be played as charged therein. You must not consider this evidence of prior games for any other purpose than that stated in this instruction." This instruction was objected to "for the reason that it is misleading and refers to the game being played in the course of business, which would mislead the jury so as to believe that if the game was played, notwithstanding that the defendant's ordinary business was that of conducting a pool-hall, that it might permit them to find that he knew of the prohibited game; and that it attaches greater weight to and calls attention to this evidence, whereas it should specifically limit the jury's consideration thereof to the purpose only of considering it as to whether or not there was a likelihood that the offense charged was committed; and it does not sufficiently caution the jury as to the purpose of such testimony."

Evidence of the commission of like offenses is admissible for the purpose of showing that the act complained of was "a part of a general plan or system pursued by him for evading the law." (*State* v. *Sylvester*, 40 Mont. 79, 105 Pac. 86; *State* v. *Pippi*, 59 Mont. 116, 195 Pac. 556.)

While the instruction is not as concise as it might be, it fairly advises the jury that it may consider the testimony for the purpose of determining whether the act complained of was one of a series constituting a general plan or system employed in defendant's business by which he permitted games of the

nature of the one complained of to be played, and, if they found such to be the case, whether such facts warranted it in finding, beyond a reasonable doubt, that defendant did knowingly permit the game in question.

The court instructed the jury that they "must not consider this evidence for any other purpose than that stated in this instruction," and abundantly cautioned them, in its instructions 6 and 8, that they could find the defendant guilty only of "knowingly permitting the precise and particular game" charged in the information. The instruction is not open to the objection urged.

6. Error is predicated on the court's refusal to give defend-
[6] ant's offered instruction No. 5, commenting on the manner in which the jury should view the evidence of detectives employed for the purpose of securing evidence. While it is proper to inquire, as was done in this case, as to the employment of a witness for such purpose, the manner and amount of his compensation, and what interest he may have in the outcome of the action, for the purpose of attacking his credibility as a witness (*State* v. *Tudor*, 47 Mont. 185, 131 Pac. 632), advantage of the facts thus brought out must be taken in argument, and they cannot be made the subject matter of an instruction.

Such an instruction has been condemned by this court in the following language: "Such an instruction is erroneous under any possible theory of this or any other case. Our Code provides: 'The jury, subject to the control of the court in the cases specified in this code, are the judges of the effect or value of evidence addressed to them, except when it is declared to be conclusive,' *etc.* (Code Civ. Proc., sec. 3390 [now sec. 10672, Rev. Codes 1921]. * * * It was the province of the jury to pass upon the weight of the evidence and the credibility of the witnesses, uninfluenced by any suggestion from the court as to the relative weight of the testimony of the different witnesses. * * * If it had been given, the court would have invaded the province of the jury." (*State* v.

*Paisley,* 36 Mont. 237, 92 Pac. 566.)    To the same effect, see
. *People* v. *Kilfoil,* 27 Cal. App. 29, 148 Pac. 812; *Copeland* v.
*State,* 36 Tex. Cr. 575, 38 S. W. 210; *People* v. *Newbold,* 260
Ill. 196, 103 N. E. 69; *Salt Lake City* v. *Robinson,* 40 Utah, 448,
125 Pac. 657; *Jaynes* v. *People,* 44 Colo. 535, 16 Ann. Cas. 787,
99 Pac. 325.

7. Appellant's offered instruction No. 8 to the effect that,
[7]   before the jury could convict the defendant, they must
find beyond a reasonable doubt that he had knowledge of the
particular game and, having such knowledge, permitted the
same, was refused.

By its instruction No. 2, the court instructed the jury that
they must so find on every material allegation of the informa-
tion; by its instruction No. 6 that "you are at liberty to
convict the defendant only for permitting the precise game
charged   *   *   *   and no other game of stud-horse poker";
and by instructions Nos. 7 and 8 cautioned the jury that
evidence of other games could be considered only for the pur-
pose of determining whether the defendant "knowingly per-
mitted a game of stud-horse poker to be played in his place
of business on the night of March 29, 1924," and could not
"convict him of the crime charged merely because you may
find that he permitted a game of stud-horse poker or any
other gambling game at a different time," *etc.*

We think the subject matter of the offered instruction was
sufficiently covered in the instructions, and therefore no error
was committed in refusing it.

8. Appellant's offered instruction No. 9 pointed out with
[8]   great particularity that, in order to convict, the state
must prove beyond a reasonable doubt that the defendant
did on the particular occasion permit the particular game
charged in the information, and the jury were at liberty to
convict only for the precise game charged, and that, "if you
conclude that the defendant may have permitted" such a game
on another occasion, this alone would not warrant a verdict
of guilty.    The court modified the instruction by adding, "but

evidence concerning same may be considered by you, as defined in these instructions." Assignment No. 11 is that the court erred in modifying the instruction, on the ground that it is repetition and emphasizes the value of that evidence.

While the addition was, perhaps, unnecessary, as the jury was so instructed in the following instruction, there was no prejudicial error in thus connecting the instruction up with what followed.

9. Appellant moved for a new trial upon the grounds form-
[9] ing the bases of the assignments hereinbefore discussed, and upon the further ground of "newly discovered evidence." In support of his motion appellant filed four affidavits, each to the effect that affiant was familiar with the premises prior to the sale to Mott, and never saw or heard a buzzer in the place. One of these affiants was a partner of the witness Benedict, at the time of the sale, who states that "to the knowledge of affiant" there never was a buzzer or system of wires operating the same, in that place of business. Appellant also filed his own affidavit and one by his counsel, stating that they were taken by surprise by this line of testimony and had no opportunity to secure the testimony of witnesses as set forth in the affidavits, prior to the close of the trial.

It must be remembered that Benedict was called in rebuttal, after both Mott and Mrs. Mott had testified that there never had been such a system in the building. The subject matter of the affidavits in support of the motion was therefore cumulative and impeaching.

The general rule is that, in order to warrant a new trial, the newly discovered evidence must be "(3) * * * so material that it would probably produce a different result upon another trial"; (4) must not be "cumulative merely— that is, does not speak as to facts in relation to which there was evidence at the trial; * * * " (6) nor such as only tends "to impeach the character or credit of a witness." (*State* v. *Matkins*, 45 Mont. 58, 121 Pac. 881.) The exception to the rule that a new trial will not be granted where the

newly discovered evidence is merely cumulative or impeaching being that, "where the impeaching evidence may demonstrate perjury in the witness upon whose testimony the verdict was founded and but for which conviction could not have been had," a new trial should be granted. (*State* v. *Belland*, 59 Mont. 540, 197 Pac. 841.)

Here the impeaching evidence set out in the affidavits goes to but one phase of the testimony tending to show knowledge on the part of appellant. Aside from the testimony concerning the buzzer system, tending by circumstantial evidence to show knowledge by the manner in which the business was conducted, there was an abundance of evidence, if believed by the jury, to show direct knowledge of the particular game, and that he not only permitted the game to be played, but assumed control over the men in charge thereof and supervision over the game itself. This testimony is to the effect that games of stud-horse poker were played in the room in question almost continually, under a system where guards or watchmen were employed to pick the players, taking only those properly vouched for into the basement; that on the night in question Mott was personally present and, on the complaint that the party running the game was "losing the money," became excited and took him out of the game, putting the man Roberts in charge. Roberts was the man who, according to the testimony of Church, sold to the complaining witness chips, took the rake-off and settled with players.

By his affidavit, counsel for appellant calls attention to the fact that the jury were permitted to view the premises, and states that the jurors made a careful examination of the place where witnesses testified the buzzer was installed. If Beardsley's testimony was not truthful, such examination should have refuted it without the testimony of these affiants.

In our opinion the "newly discovered evidence" was not sufficient to warrant the granting of a new trial: First, because it is merely cumulative and impeaching; and, second, because it does not fulfill the requirement that it be "so material that

it would probably produce a different result upon another trial.''

No substantial error appearing in the record, the judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOL-LOWAY and STARK concur.

MR. JUSTICE GALEN, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied February 26, 1925.