## McBOYLE v. UNITED STATES.
### No. 213.

Circuit Court of Appeals, Tenth Circuit.
Aug. 18, 1930.

COTTERAL, Circuit Judge, dissenting.

Harry F. Brown, of Guthrie, Okl. (Frank Dale and Mr. Robert W. Hoyland, both of Guthrie, Okl., on the brief), for appellant.

Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl. (Fred A. Wagoner and William Earl Wiles, Asst. U. S. Attys., both of Oklahoma City, Okl., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

William W. McBoyle was convicted and sentenced for an alleged violation of the National Motor Vehicle Theft Act, section 408, title 18, U. S. Code (18 USCA § 408). The indictment charged that on October 10, 1926, McBoyle caused to be transported in interstate commerce from Ottawa, Ill., to Guymon, Okl., one Waco airplane, motor No. 6124, serial No. 256, which was the property of the United States Aircraft Corporation and which had theretofore been stolen; and that McBoyle then and there knew it had been stolen.

The evidence of the government established the following facts: During the year 1926, McBoyle operated a commercial airport at Galena, Ill. On July 2, 1926, McBoyle hired A. J. Lacey as an aviator for a period of six months. In October, 1926, McBoyle induced Lacey to go to the field of the Aircraft Corporation at Ottawa, Ill., and steal such Waco airplane from the Aircraft Corporation. Lacey went to Ottawa, stole the airplane, and flew it to Galena, arriving there October 6th. McBoyle inquired of Lacey if any one knew the latter had taken the airplane at Ottawa. Lacey replied in the negative. Thereupon, McBoyle changed the serial number to No. 249, and painted it over in order to conceal the alteration. McBoyle and Lacey serviced the airplane and supplied it with gas and oil. McBoyle gave Lacey $150 for expense money and instructed Lacey to fly the airplane to Amarillo, Tex., and there lease an airport for them to operate during the winter months. McBoyle arranged with Lacey to communicate with him en route by telegraphic code under the name of Pat Sullivan. Lacey left McBoyle's airport at Galena, Ill., on October

274

6th and flew the airplane to Guymon, Okl., stopping en route at St. Joseph, Mo., and Garden City, Kan. At Guymon, they communicated with each other by telegraph and McBoyle instructed Lacey to sell or store the stolen airplane and come back to Galena. Thereupon, Lacey returned to Galena. McBoyle then gave Lacey $250 for expenses and instructed Lacey to take an airplane of the same kind and make belonging to McBoyle back to Guymon and substitute it for the stolen airplane. The purpose was to deceive the officers when they found the Waco plane at Guymon. Lacey started back to Guymon with the second airplane but crashed near Inman, Kan. Thereupon, Lacey returned to Galena and continued to work for McBoyle until the following December.

McBoyle denied all of the facts incriminating him except the sending and receiving of the telegrams. He testified that the telegrams did not refer to the airplane but to liquor which Lacey was supposed to have had in his possession in the airplane.

The primary question is whether an airplane comes within the purview of the National Motor Vehicle Theft Act. This act defines the term "motor vehicle," as follows:

"The term 'motor vehicle' when used in this section shall include an automobile, automobile truck, automobile wagon, motor cycle, or any other self-propelled vehicle not designed for running on rails."

Counsel for McBoyle contend that the word "vehicle" includes only conveyances that travel on the ground; that an airplane is not a vehicle but a ship; and that, under the doctrine of ejusdem generis, the phrase "any other self propelled vehicle" cannot be construed to include an airplane.

The Century Dictionary gives the derivation of the word "vehicle" as follows: "F. Vehicule, L. Vehiculum," meaning a "conveyance, carriage, ship." It defines the word as "Any receptacle, or means of transport, in which something is carried or conveyed, or travels." (Italics ours.)

It will be noted that the Latin word "vehiculum" means a ship as well as a carriage.

Webster defines the word "vehicle" as follows:

"(1) That in or on which any person or thing is or may be carried, esp. on land, as a coach, wagon, car, bicycle, etc.; a means of conveyance.

"(2) That which is used as the instrument of conveyance or communication."

Corpus Juris, vol. 42, p. 609, § 1, defines a motor vehicle, as follows:

"A 'motor vehicle' is a vehicle operated by a power devoloped within itself and used for the purpose of carrying passengers or materials; and as the term is used in the different statutes regulating such vehicles, it is generally defined as including all vehicles propelled by any power other than muscular power, except traction engines, road rollers, and such motor vehicles as run only upon rails or tracks."

Both the derivation and the definition of the word "vehicle" indicate that it is sufficiently broad to include any means or device by which persons or things are carried or transported, and it is not limited to instrumentalities used for traveling on land, although the latter may be the limited or special meaning of the word. We do not think it would be inaccurate to say that a ship or vessel is a vehicle of commerce.

An airplane is self-propelled, by means of a gasoline motor. It is designed to carry passengers and freight from place to place. It runs partly on the ground but principally in the air. It furnishes a rapid means for transportation of persons and comparatively light articles of freight and express. It therefore serves the same general purpose as an automobile, automobile truck, or motorcycle. It is of the same general kind or class as the motor vehicles specifically enumerated in the statutory definition and, therefore, construing an airplane to come within the general term, "any other self propelled vehicle," does not offend against the maxim of ejusdem generis.

Furthermore, some meaning must be ascribed to the general phrase "any other self propelled vehicle," which Congress wrote into the act. It specifically enumerated all of the known self-propelled vehicles designed for running on land. It used the word "automobile," a generic term, which includes all self-propelled motor vehicles that travel on land and are used for the transportation of passengers, except those designed for running on rails. 42 C. J. p. 609, § 2.

We conclude that the phrase, "any other self propelled vehicle," includes an airplane, a motorboat, and any other like means of conveyance or transportation which is self-propelled, and is of the same general class as an automobile and a motorcycle.

Counsel for McBoyle contend that the evidence failed to establish that he committed any crime in the Western District of Oklahoma, and that therefore the United States District Court for that district, because of the provisions of section 2, art. 3 of the United States Constitution, and the Sixth Amendment to the United States Constitution, was without jurisdiction.

The Motor Vehicle Act provides that "whoever shall transport or cause to be transported in interstate * * * commerce a motor vehicle, knowing the same to have been stolen, shall be punished," etc., and that "any person violating this section may be punished in any district in or through which such motor vehicle has been transported or removed by such offender."

The crime of transporting a stolen motor vehicle in interstate commerce is a continuing offense. It is committed in each state and district through which such vehicle is transported. It was not essential that McBoyle should have been physically present in the Western District of Oklahoma. The constitutional requirement is that the accused shall be tried in the state or district where the crime is committed, but not necessarily in the state and district where the accused was at the time the crime was committed. It is sufficient if the crime was committed in the Western District of Oklahoma and McBoyle caused it to be committed there.

Salinger v. Loisel, 265 U. S. 224, 235, 44 S. Ct. 519, 68 L. Ed. 989; Burton v. United States, 202 U. S. 344, 387, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; In re Palliser, 136 U. S. 257, 265–268, 10 S. Ct. 1034, 34 L. Ed. 514.

The jury was warranted in finding, from the evidence, that McBoyle caused Lacey to undertake to transport such airplane from Ottawa, Ill., to Amarillo, Tex., that Lacey started from Ottawa and succeeded in flying as far as Guymon, Okl., and that, upon telegraphic instructions from McBoyle, Lacey stored the airplane at Guymon and returned to Galena; and in concluding that McBoyle caused the offense to be committed in the Western District of Oklahoma.

At the trial, Mathey, a witness in behalf of McBoyle, testified as to the good reputation of the latter, after stating that he had made an investigation into McBoyle's character. Upon cross-examination, he was asked whether or not, through such investigation, he had learned of specific charges or reports concerning McBoyle. Objection to this line of cross-examination was overruled. Counsel for McBoyle contend that such ruling was error. It is within the discretion of the trial court to permit a witness, as to reputation, to be asked upon cross-examination as to particular charges against or reports concerning the person whose reputation is under investigation. Such evidence is admissible to test the knowledge and credibility of the witness, but not as substantive evidence against the defendant. White v. State, 111 Ala. 92, 21 So. 330; Smith v. State, 103 Ala. 57, 15 So. 866, 871; McCreary v. Commonwealth, 158 Ky. 612, 165 S. W. 981; People v. Gordan, 103 Cal. 568, 37 P. 534, 535. We do not think the court abused its discretion in the instant case.

During the course of the cross-examination of McBoyle, he was interrogated by counsel for the government concerning matters that indicated he may have been connected, either directly or indirectly, with other offenses—a stolen automobile, another airplane stolen by Lacey, and some transactions concerning intoxicating liquor. These matters would have been immaterial and improper but for the fact that they were first injected into the case by counsel for McBoyle upon the cross-examination of Lacey and in the direct examination of McBoyle. Having opened up these subjects, McBoyle cannot complain because counsel for the government inquired concerning them in his cross-examination of McBoyle. State v. Ritter, 288 Mo. 381, 231 S. W. 606, 608; Olive v. State, 11 Neb. 1, 7 N. W. 444, 452; State v. Mott, 72 Mont. 306, 233 P. 602, 604; 40 Cyc. 2496.

Counsel for McBoyle contend that the court erred in admitting, over objection, copies of the telegrams which passed between McBoyle and Lacey while the latter was at Guymon. McBoyle admitted sending and receiving the telegrams and admitted the correctness of some of the copies. Lacey identified copies of the telegrams and stated that they were sent and received by him. The telegraph operator at Guymon testified that he furnished copies of the telegrams to the United States Attorney, and that the originals had been destroyed. A sufficient foundation was laid for the admission of the copies, and the evidence was material.

After the verdict, McBoyle filed a motion in arrest of judgment and for a new trial. Counsel for McBoyle contend that the court erred in denying these motions. Matters presented by these motions were ad-

dressed to the discretion of the trial court. We have examined the record and are convinced that the trial court did not abuse its discretion in denying such motions. A ruling on a motion for a new trial will not be disturbed on appeal, in the absence of an abuse of discretion. Gibson v. Luther (C. C. A. 8) 196 F. 203, 206; Hamilton & Sons Co. v. Moss-Jellico C. Co. (C. C. A. 6) 271 F. 237, 238; Capital Traction Co. v. Sneed, 58 App. D. C. 141, 26 F.(2d) 296, 301; Detroit United Ry. Co. v. Craven (C. C. A. 6) 13 F.(2d) 352.

The judgment is therefore affirmed.

COTTERAL, Circuit Judge (dissenting).

I feel bound to dissent on the ground that the National Motor Vehicle Theft Act should not be construed as relating to the transportation of airplanes.

A prevailing rule is that a penal statute is to be construed strictly against an offender and it must state clearly the persons and acts denounced. 25 R. C. L. pp. 1081–1084; First Nat. Bank of Anamoose v. United States (C. C. A.) 206 F. 374, 46 L. R. A. (N. S.) 1139.

It would have been a simple matter in enacting the statute to insert, as descriptive words, airplanes, aircraft, or flying machines. If they had been in the legislative mind, the language would not have been expressed in such uncertainty as "any other self-propelled vehicle not designed for running on rails." The omission to definitely mention airplanes requires a construction that they were not included. Furthermore, by excepting vehicles running on rails, the meaning of the act is clarified. These words indicate it was meant to be confined to vehicles that *run,* but not on rails, and it did not extend to those that *fly.* Is it not an unreasonable view that airplanes fall within the description of self-propelled vehicles that do not run on rails? The question is its own answer.

The rule of ejusdem generis has special application to this statute. General words following a particular designation are usually presumed to be restricted so as to include only things or persons of the same kind, class, or nature, unless there is a clear manifestation of a contrary purpose. 25 R. C. L. pp. 996, 997. The general description in this statute refers to vehicles of the same general class as those enumerated. We may assume an airplane is a vehicle, in being a means of transportation. And it has its own motive power. But is an airplane classified generally with "an automobile, automobile truck, automobile wagon, or motor cycle?" Are airplanes regarded as *other types of automobiles* and the like? A moment's reflection demonstrates the contrary.

Counsel for appellant have referred us to the debates in Congress when the act was pending as persuasive of an interpretation in his favor. House, Cong. Rec., vol. 58, part 6, pp. 5470 to 5478; Senate, Id., vol. 58, part 7, pp. 6433 to 6435. The proceedings are not permissible aids, apart from the journals or committee reports. But they may be referred to as showing the history of the period. Standard Oil Co. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734. The discussions of the proposed measure are enlightening in this case from a historic standpoint, in showing that the theft of automobiles was so prevalent over the land as to call for punitive restraint, but airplanes were never even mentioned.

It is familiar knowledge that the theft of automobiles had then become a public menace, but that airplanes had been rarely stolen if at all, and it is a most uncommon thing even at this date. The prevailing mischief sought to be corrected is an aid in the construction of a statute. 25 R. C. L. 1016.

I am constrained to hold that airplanes were not meant by the act to be embraced in the designation of motor vehicles, and that the indictment charged no offense against the defendant.